UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANAND RATHOD, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PROVIDENCE HEALTH & SERVICES, *et al.*, <br><br> Defendants. | Cause No. C20-0064RSL <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on "The United States' Motion for Summary Judgment." Dkt. # 94. Plaintiffs Anand and Aesha Rathod are the parents of plaintiff PR, who is represented in this action by Joshua Brothers as Guardian ad Litem. Plaintiffs filed this lawsuit to recover damages related to the labor and delivery of PR at Providence Regional Health Center – Everett ("Providence") on March 14, 2017, identifying various theories of recovery. Dkt. # 1 at ¶ 4.4. The United States substituted itself as defendant in place of Amy Rodriguez, M.D., and Community Health Center of Snohomish County ("CHCSC") pursuant to 28 U.S.C. § 2679(d)(1). Plaintiffs settled with all other defendants. The United States seeks a summary determination of most of plaintiffs' claims under Rule 12(b)(6) on the ground that plaintiffs have failed to raise an inference that their injuries are causally related to any breach of the standard of

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 1

care and failed to support their lack of informed consent claim. It also moves for dismissal of plaintiff's corporate negligence claim for lack of subject matter jurisdiction under Rule 12(b)(1).

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 2

offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[1] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

### BACKGROUND

Plaintiff Aesha Rathod learned she was pregnant in July 2016. Due to a change in her insurance, Ms. Rathod had to change providers and chose Dr. Rodriguez at CHCSC. Dr. Rodriquez is board-certified in family medicine, which allows her to provide prenatal and obstetric care as part of her practice. She is not, however, a specialist in obstetrics and is not credentialed to perform cesarean or forceps-assisted deliveries. She did not discuss the limits of her certifications with Ms. Rathod.

Early in the morning of March 13, 2017, Ms. Rathod's water broke. She went to Providence and was placed on continuous fetal heartrate monitoring to measure the fetus' heartrate and heartrate patterns. Ms. Rathod went into labor and was given an epidural at approximately 9:00 p.m. Ms. Rathod began pushing at 12:16 p.m. on March 14, 2017. Up until that time, the fetal heartrate measurements were reassuring, and plaintiffs' expert obstetrician, Harold Zimmer, M.D., agrees that Ms. Rathod's treatment during this period met the standard of care.

---

[1] Plaintiffs have not relied on the opinions of Laura Mahlmeister, R.N., Ph.D., to support their claims. The Court therefore need not determine whether those opinions are admissible.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 3

Ms. Rathod pushed for approximately two-and-a-half hours, but the fetal station did not progress. Dr. Rodriguez documented that Ms. Rathod was tired and experiencing increased pain with contractions. While providers worked to get Ms. Rathod another dose of epidural medication, Dr. Rodriguez consulted obstetrician Dana Blackham, M.D., for his expertise in determining whether a cesarean delivery were necessary. Dr. Blackham examined Ms. Rathod at 3:25 p.m. and decided to rotate the fetal head *in utero* so that the head could descend. The plan, with which Dr. Rodriguez agreed, was to allow the second epidural to take effect, then have Ms. Rathod resume pushing. Dr. Blackham would reassess Ms. Rathod in an hour to see whether a cesarean or forceps-assisted delivery were necessary.

Less than half an hour after the second epidural was administered, the fetal head had descended significantly, and Ms. Rathod resumed pushing. Dr. Blackham returned at 4:45 p.m., evaluated the fetal position, and used forceps to bring the fetus to crowning. He then delivered PR. During the forceps-assisted delivery, Ms. Rathod experience a fourth-degree perineal tear.

PR was born with globally decreased tone, minimal spontaneous movement, and minimal respiratory efforts. Providence providers performed neonatal resuscitation and were concerned that PR had hypoxic-ischemic encephalopathy ("HIE"),[2] a type of encephalopathy that is caused by a prolonged disruption of the fetal-maternal exchange of oxygen and carbon dioxide which overwhelms the fetus' compensatory abilities and leads to neurologic injury. They transferred

---

[2] Dr. Zimmer uses the acronym HIE to mean "hemorrhagic ischemic encephalopathy." Dkt. # 100-2 at 4.

PR to Seattle Children's Hospital for further care. PR was found to have a right-sided spinal injury affecting her right arm and diaphragm. When she was first admitted to Seattle Children's, PR's problem list included neonatal encephalopathy, a broad category that includes HIE but also encompasses other causes of injury to a newborn's neurological function. After five weeks in the hospital, the diagnosis was stated variously as neonatal encephalopathy, HIE, or suspected HIE related in some way to a cervical spine injury arising from or caused by the forceps-assisted delivery:

> PR is a "female with neonatal HIE and chronic respiratory failure from right diaphragmatic paralysis secondary to cervical spine hemorrhage from a forceps assisted delivery and prolonged resuscitation"
>
> "PR is an ex-term infant who was injured after a traumatic forceps delivery resulting in HIE and C2-C3 cervical spine bleed leading to a R diaphragmatic paralysis"
>
> PR had a "complicated forceps delivery, neonatal encephalopathy . . . with areas of restricted diffusion on MRI and hematoma on at the C2-3 level on the right on MRI C-spine"

Dkt. # 95-19 at 2; Dkt. # 95-20 at 3. *See also* Dkt. # 95-19 at 2-3; Dkt. # 95-20 at 2-3.

## DISCUSSION

**A. Medical Negligence**

A medical negligence claim, like other negligence claims, requires a showing of duty, breach, causation, and damages. "[T]o recover damages for medical negligence, the plaintiff must establish that (1) the health care provider breached the accepted standard of care and (2) the breach was a proximate cause of the injury complained of." *Hill v. Sacred Heart Med.*

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 5

*Ctr.*, 143 Wn. App. 438, 447 (2008). In order to show that a health care provider failed to follow the accepted standard of care, one must prove that the "provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances." RCW 7.70.040(1)(a). Expert testimony is generally required to establish the standard of care and causation in medical malpractice cases. *Brotherton v. U.S.*, No. 2:17-CV-00098-JLQ, 2018 WL 3747802, at *5 (E.D. Wash. Aug. 7, 2018) (citing *McLaughlin v. Cooke*, 112 Wn.2d 829, 836-37 (1989)).

Plaintiffs argue that, but for Dr. Rodriguez's breach of the standard of care, PR would have been delivered by cesarean section and they would have avoided the spinal injury, the hypoxic ischemia, and the perineal tear. They rely on the testimony of Dr. Zimmer to establish both the standard of care and causation. Dr. Zimmer reviewed the fetal heartrate tracing and found that, once Ms. Rathod began pushing, there were moderate to severe decelerations with almost every contraction, spanning approximately seventy minutes. The fetal heartrate rose again at approximately 2:15 p.m., and its variability decreased. After noting the recurrent decelerations and the failure of the baby to descend, Dr. Rodriguez asked for a consultation from Dr. Blackham. It is Dr. Zimmer's opinion that the fetal heartrate tracings showed signs that PR was:

> becoming intolerant of the stress of labor. Those signs were not recognized and resulted in lack of oxygen to the brain which caused the Hemorrhagic Ischemic Encephalopathy. Had those signs been recognized and a timely intervention by Cesarean Section been performed in the time range of [1:15 p.m. - 2:00 p.m.], the

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 6

baby would, more likely than not, not have been damaged in this way. This failure to recognize the fetal distress and intervene was a clear violation of the standard of care.

Dkt. # 100-2 at 4-5.[3]

At his deposition, Dr. Zimmer faulted Dr. Rodriguez for failing to interpret the tracing properly and failing to consult with an obstetrician in a timely manner. Dkt. # 100-3 at 11. He asserts that, had Dr. Rodriguez applied the modern obstetrics interpretation of tracings, she would have understood that intervention was necessary. Dkt. # 100-3 at 32. The government is seemingly willing to assume that there is a triable issue of fact regarding a breach of the standard of care, but argues that it is nevertheless entitled to summary judgment on the medical negligence claim because Dr. Zimmer's conclusory declaration of causation is insufficient to establish that any breach on the part of Dr. Rodriguez caused plaintiffs' injuries. Dr. Zimmer acknowledges that he did not attempt to identify which of PR's diagnoses were caused by the deteriorating condition that was reflected on the tracings and concedes that another expert – such as the doctors at Seattle Children's – would have to testify regarding the effects of Dr. Rodriguez' failure to properly interpret the tracings and initiate an expeditious change of care. Dkt. # 95-7 at 37-39.

---

[3] Dr. Zimmer also opines that Dr. Blackham's application of forceps traction was excessive and caused injury to PR's spinal cord. Dkt. # 100-2 at 5. As discussed below, plaintiffs have not attempted to establish a direct causal connection between Dr. Rodriguez's actions and the way in which the forceps were used. Dkt. # 95-7 at 18-19. Similarly, plaintiffs have not offered expert testimony in support of their claims that Dr. Rodriguez proximately caused Ms. Rathod's perineal tear. Dkt. # 95-7 at 18.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 7

Plaintiffs argue that expert testimony establishing causation is not necessary in this case because the causal connection is so clear. According to plaintiffs, had Dr. Rodriguez recognized that the fetal heartrate tracings required intervention, PR would have been born by cesarean section, she would not have experienced a prolonged disruption of the fetal-maternal exchange of oxygen and carbon dioxide, she would have avoided the forceps-related injury to her spinal cord, and Ms. Rathod would not have experienced a perineal tear. Where medical facts are an essential element of a cause of action, they "must be proven by expert testimony unless they are 'observable by [a layperson's] senses and describable without medical training.'" *Harris v. Robert C. Groth, M.D., Inc., P.S.*, 99 Wn. 2d 438, 449 (1983) (quoting *Bennett v. Dep't of Labor & Indus.*, 95 Wn.2d 531, 533 (1981)). Thus, "expert testimony is always required except in those few situations where understanding causation does not require technical medical expertise." *Frausto v. Yakima HMA, LLC*, 188 Wn. 2d 227, 232, 393 P.3d 776, 779 (2017) (*en banc*) (internal quotation marks and citation omitted).

In *Frausto*, expert testimony tying the development of bedsores to the alleged failure to move, turn, and provide plaintiff with an appropriate bed was deemed necessary. In this case, the processes at issue are far more complicated and likely to be well outside the ordinary juror's understanding and/or observation. Plaintiffs apparently intend to put before the jury nothing more than evidence of a failure to meet the standard of care and evidence of an injury, then to ask the jury to make a causative finding without any expert assistance. If permitted, the jury would be required to guess whether Dr. Rodriguez' failure to obtain an obstetrics consult

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 8

between 1:15 p.m. and 2:00 p.m., the turning of the fetus *in utero* and subsequent descent into the birth canal, or the forceps-assisted delivery caused the prolonged interruption in the fetus' oxygen supply that, in turn, caused the neurologic injuries at issue. What happened to PR at these various stages of labor and delivery is neither observable nor describable without medical training and a detailed evaluation of the medical evidence in this case. Plaintiffs have failed to offer any expert testimony tying the decelerations observed while Ms. Rathod was pushing to PR's subsequent diagnosis of HIE.

With regards to the use of forceps and the perineal tear, plaintiffs have similarly failed to raise a triable issue of fact regarding causation. As the record currently stands, the jury would have to speculate that Dr. Blackham would have evaluated the situation differently and recommended a cesarean section had Dr. Rodriguez sought an obstetrics consult at 2:00 p.m. rather than at 3:00 p.m. As it was, Dr. Blackham recommended rotating the fetus *in utero* and waiting to make the decision between a cesarean or forceps-assisted delivery until the epidural bolus had taken effect and the fetus had a chance to descend.[4] There is no indication that Dr. Blackham would have recommended a less conservative strategy – *i.e.*, surgery – an hour earlier, nor is there any reason to believe that Ms. Rathod would have chosen a cesarean delivery over a forceps-assisted delivery if the doctors failed to agree on a recommendation.

---

[4] Dr. Zimmer does not fault Dr. Rodriguez for failing to overrule Dr. Blackham's plan to rotate the fetus and wait to see what happens, stating that "she didn't necessarily have the indication" that an immediate cesarean section was needed. Dkt. # 95-7 at 17.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 9

Even if the Court were to assume that these causation-related facts do not require expert testimony, they show that Dr. Rodriguez' conduct was not the legal cause of plaintiffs' injuries.

> Proximate causation is divided into two elements: cause in fact and legal causation. . . . "Cause in fact" refers to the actual, "but for," cause of the injury, *i.e.*, "but for" the defendant's actions the plaintiff would not be injured. . . . Establishing cause in fact involves a determination of what actually occurred and is generally left to the jury. . . Unlike factual causation, which is based on a physical connection between an act and an injury, legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend. Thus, where the facts are not in dispute, legal causation is for the court to decide as a matter of law. . . . The focus in the legal causation analysis is whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability. A determination of legal liability will depend upon mixed considerations of logic, common sense, justice, policy, and precedent. . . .

*Schooley v. Pinch's Deli Mkt., Inc.,* 134 Wn.2d 468, 478-79 (1998) (internal quotation marks, citations, and footnote omitted).

> It is quite possible, and often helpful, to state every question which arises in connection with [legal causation] in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur? Such a form of statement does not, of course, provide any answer to the question, or solve anything whatever; but it does serve to direct attention to the policy issues which determine the extent of the original obligation and of its continuance, rather than to the mechanical sequence of events which goes to make up causation in fact.

*Id.* at 479-80 (quoting William L. Prosser, The Law of Torts 244–45 (4th ed. 1971)). Here, it is undisputed that Dr. Rodriguez could not perform either a cesarean or a forceps-assisted delivery and that she appropriately sought an obstetrics consult regarding those options. It is also

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 10

undisputed that Dr. Blackham recommended a forceps-assisted delivery and had sole control of the forceps during the procedure. Dr. Zimmer concedes that Dr. Rodriguez had no duty to control Dr. Blackham's operation of the forceps (Dkt. # 95-7 at 18-19): she therefore had no ability or duty to protect plaintiffs from any injuries resulting from their use, namely the spinal cord hemorrhage and the perineal tear. Legal causation simply does not exist in these circumstances, even though one could argue that the injuries would not have occurred "but for" Dr. Rodriguez' failure to insist on a cesarean section or her decision to consult Dr. Blackman in the first place. Holding a general practitioner who is unable to perform a particular procedure responsible for the acts of a specialist she consulted and upon whose expertise she non-negligently relied would be illogical, nonsensical, and unjust, it would discourage resort to and reliance on specialized expertise, and it is seemingly without precedent in Washington law.

In light of Dr. Zimmer's acknowledgment that he did not analyze and would not opine on causation, plaintiffs cite the report of Dr. Robert Cooper, M.D., which states that PR has been diagnosed with "[h]ypoxic ischemic encephalopathy following birth on March 14, 2017" and a "[r]ight-sided C2-C3 spinal cord injury." Dkt. # 100-4 at 101. A statement regarding the conditions affecting PR sheds no light on the cause of those conditions, however. Nor does plaintiffs' suggestion that they "may call treating healthcare providers at trial to testify on the issues of causation and damages" (Dkt. # 100 at 11) satisfy their burden of raising a triable issue of fact regarding a legally significant causal connection between Dr. Rodriguez' failure to obtain

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 11

an obstetrics consult prior to 2:00 p.m. and plaintiffs' injuries. The government is therefore entitled to judgment as a matter of law on plaintiffs' medical negligence claim.

**B. Informed Consent**

To prevail on their informed consent claim, plaintiffs must prove that: 1) Dr. Rodriguez failed to inform Ms. Rathod of a material fact or facts relating to the treatment; 2) Ms. Rathod consented to the treatment without being aware of or fully informed of such material fact or facts; 3) a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts; and 4) the treatment in question proximately caused injury to the patient. *See Backlund v. Univ. of Wash,*, 137 Wn.2d 651, 667 (1999). Whether a fact relating to treatment is material depends on "the existence of a risk, its likelihood of occurrence, and the type of harm in question." *Smith v. Shannon*, 100 Wn 2d 26, 34 (1983). "Only a physician (or other qualified expert) is capable of judging what risks exist and their likelihood of occurrence." *Collins v. Juergens Chiropractic, PLLC*, 13 Wn. App. 2d 782, 800, review denied, 196 Wash. 2d 1027 (2020) (quoting *Smith*, 100 Wn.2d at 33). Neither Dr. Zimmer nor Dr. Cooper opine regarding the relative risks of a cesarean section versus a forceps-assisted delivery in the circumstances presented here. Indeed, Dr. Zimmer was asked to assume that Ms. Rathod had consented to her care, an assumption which he deemed appropriate in light of the written materials he was provided. Dkt. # 95-7 at 6. In the absence of expert

testimony regarding the risks involved in proceeding with a vaginal delivery at the time that decision was made, plaintiffs cannot succeed on their informed consent claim.[5]

**C. Corporate Liability**

The United States has not waived its sovereign immunity for claims against a non-individual entity such as CHCSC. Regardless whether there would be a triable issue of fact if CHCSC were a private medical practice, the claim cannot be brought against the United States. The corporate negligence claim must therefore be dismissed under Rule 12(b)(1).

**D. Damages**

Because there are no triable claims remaining in this case, the Court need not determine whether plaintiffs have adequately supported their claims for lost earnings, lost earning capacity, or medical expenses.

//

//

---

[5] To the extent plaintiffs' informed consent claim was predicated on Dr. Rodriguez' alleged failure to notify Ms. Rathod that, as a family practitioner, she could not perform a cesarean section or a forceps-assisted delivery, it is not clear that the alleged failure qualifies as a material fact under RCW 7.70.050(3), and plaintiffs have abandoned the claim.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 13

For all of the foregoing reasons, the government's motion to dismiss (Dkt. # 94) is GRANTED and plaintiffs' claims are DISMISSED.[6] The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiffs.

DATED this 21st day of November, 2022.

Robert S. Lasnik
United States District Judge

---

[6] In light of the dismissal, the Court need not resolve the government's "Motion to Strike the Supplemental Reports of Robert Cooper, M.D., and William Davenport, M.B.A." (Dkt. # 78), "Motion to Modify Plaintiffs' Subpoenas to Defense Expert Witnesses" (Dkt. # 83), and "Motion to Exclude Opinions of Robert Cooper, M.D." (Dkt. # 96).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 14